___FILED ___ENTERED
___LODGED ___RECEIVED

SEP 10 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR18-213 JLR |
|---|---|
| Plaintiff, | INFORMATION |
| v. | (Felony) |
| BARBARA TOMASZEWSKI, | |
| Defendant. | |

The United States Attorney charges that:

**COUNT ONE**
**(Conspiracy to Commit Visa Fraud)**

Beginning at a time unknown, in King County, and continuing until on or about March 2016, within the Western District of Washington, and elsewhere, BARBARA TOMASZEWSKI, and others known and unknown, did knowingly and willfully conspire, combine, confederate and agree to commit offenses against the United States; to wit, Visa Fraud, in violation of Title 18, United States Code, Section 1546.

//

//

//

## I. Background

At all times relevant to this Information:

A. Specialty Occupation ("H-1B") Visas

1. Employers in the United States are able to petition the United States Citizenship and Immigration Services ("USCIS") to authorize foreign-national employees to work temporarily in the United States. One such type of temporary work authorization is a "specialty-occupation" or "H-1B" visa, under which a foreign national is authorized by USCIS to work in the United States in a "specialty occupation" for the petitioning employer.

2. In most cases, the foreign nationals who are the subjects of petitions for specialty-occupation visas are residents of a foreign country at the time the petition is filed. Some foreign nationals named in petitions may, however, already be lawfully present in the United States pursuant to another H-1B visa or other forms of immigration status. Whether a foreign national is resident in the United States or overseas at the time a specialty-occupation visa petition is approved affects the steps that the foreign national must take after her petition is approved. Specifically, in cases where the foreign national is resident in a foreign country at the time the petition is approved, the foreign national must submit to the additional step of an interview at a U.S. consulate in their country of residence.

3. In recent years, U.S. employers typically have sought specialty-occupation visas for foreign nationals who have experience and post-graduate degrees in computer sciences, biological sciences, and engineering. Because specialty-occupation visas originally were designed to enable U.S. employers to use foreign nationals for certain narrow categories of jobs in the absence of a large enough labor pool in the U.S., specialty-occupation visas are subject to strict issuance requirements, including quotas, certifications by the petitioning employers regarding wages, and lengthy processing times. Before filing a specialty-occupation petition for a foreign-national employee, an employer generally must attest to the U.S. Department of Labor ("DOL") that the

employee will be paid the prevailing wage and enjoy similar working conditions as U.S.-national employees.

4. In the event DOL accepts those attestations (which are contained in a document called a Labor Conditions Application or "LCA"), the employer may then submit to USCIS a Petition for Nonimmigrant Worker (or "I-129" petition) for each foreign national who it wishes to employ pursuant to the approved LCA. The I-129 petition requires the petitioning employer to specify the requested nonimmigrant classification, – *i.e.*, the type of temporary visa status – it seeks for the foreign national named in the petition. The term "nonimmigrant" refers to the fact that the putative visa holder is expected to maintain their permanent residence in another country and only live in the United States for a temporary basis (*e.g.*, to perform an specialty occupation).

5. The I-129 petition requires the petitioning employer to disclose the relevant foreign national's name, alien registration number, and immigration status (if already in the U.S.). The I-129 petition requires the petitioning employer to disclose the address where the foreign national will work, their wages, their dates of employment, and whether they will work at an off-site location (*i.e.*, at another company, such as one of the petitioner's clients). Such information is material to whether the application will be approved and any limitations USCIS may impose on its approval. An authorized representative of the petitioning employer must also sign the I-129 petition and declare under penalty of perjury "that I have reviewed this petition and that all of the information contained in the petition, including all responses to specific questions, and in the supporting documents, is complete, true, and correct." Moreover, if the employer seeks specialty-occupation status for the foreign national named in the I-129 petition, the employer must submit additional information (again, under penalty of perjury), including the foreign national's proposed duties and prior work experience.

6. Employers may provide evidence to substantiate the assertions in their I-129 petitions. In order to satisfy USCIS that the requests made in the petitions are

properly substantiated, petitioning employers may submit the following types of documents:

      a.    **Proof of Employment**: Petitioning employers may include a signed employment contract between the employer and the foreign national. The contract ordinarily will set forth agreements regarding job title, place of employment, and salary.

      b.    **Proof of Bona Fide Project**: Where the petitioning employer claims that the specialty-occupation position involves work for a client, it typically includes numerous documents in order prove the client relationship exists, that the project exists, and that work on the project qualifies as a specialty occupation. These documents include contracts between the employer and its client, and letters from the client (commonly referred to as "*end-client letters*") attesting that the client has earmarked the foreign national for a project that requires specialized skills.

7. These documents are material to whether USCIS will approve a petition and the duration of work eligibility that USCIS will authorize.

B.     Relevant Entities and Individuals

8. COMPANY A and COMPANY B (collectively the "Companies") were two Washington-state companies with offices in Bellevue, Washington. The Companies were owned and operated by their Chief Executive Officer, referred to herein as "CO-CONSPIRATOR 1." The Companies also had a Chief Operating Officer, referred to herein as "CO-CONSPIRATOR 2"

9. The Companies were in the business of hiring employees with skills in the information-technology fields and marketing those employees to larger companies for their short-term project needs. The Companies' profit consisted of the difference the salary they paid each employee and the price their clients paid for that employee's work.

10. The Companies' employees consisted, in substantial part, of foreign nationals who were authorized to work temporarily in the United States under specialty-

occupation (*i.e.*, H-1B) visas. Each employee was therefore the subject of an I-129 petition filed by their relevant employer – *i.e.*, COMPANY A filed I-129 petitions for its foreign-national employees, whereas COMPANY B filed I-129 petitions for its foreign-national employees.

11.   BARBARA TOMASZEWSKI was a resident of King County in the State of Washington.

12.   Between in or about 2011 and in or about 2016, TOMASZEWSKI worked as an outside contractor for the Companies, preparing I-129 petitions on behalf of the Companies for a per-petition fee. TOMASZEWSKI did not sign the petitions, but instead prepared them for CO-CONSPIRATOR 1's signature. CO-CONSPIRATOR 1 signed all but one of COMPANY A's petitions and the majority of COMPANY B's petitions.

13.   CO-CONSPIRATOR 2 assisted TOMASZEWSKI in preparing the petitions, primarily insofar as he acted as a conduit between TOMASZEWKSI and CO-CONSPIRATOR 1 in the course of ensuring that the documents TOMASZEWSKI created in the first instance were reviewed and edited by CO-CONSPIRATOR 1, as necessary.

**II. Manner and Means of the Conspiracy**

14.   Beginning in or around 2011, at CO-CONSPIRATOR 1's direction, TOMASZEWSKI inserted false and fraudulent information in the companies' I-129 petitions. More specifically, in over one hundred I-129 petitions that she prepared, TOMASZEWSKI included false attestations that the foreign national named in the petition already had been earmarked for a bona fide project for the relevant petitioning company's client, and that the foreign national would perform the specified project work at the petitioning company's offices in Bellevue, WA. In truth and in fact, and as TOMASZEWSKI then and there knew, the foreign nationals who were named in the petitions that she prepared had not been earmarked for projects at the named clients, did not have earmarked projects at any other client, and would not be assigned to work on

client projects at the petitioning companies' offices. TOMASZEWSKI knew that the foreign nationals instead would be marketed for off-site projects to different clients if and when USCIS approved their petitions.

15. At CO-CONSPIRATOR 1's direction, TOMASZEWSKI created forged and fraudulent documents to substantiate false statements in the visa petitions. The fraudulent documents included: (a) fraudulent employment agreements (titled "offer letters") between the petitioning company and the foreign national that misstated the foreign national's title and salary; (b) fraudulent end-client letters that purported to have been issued and signed by clients that purportedly had agreed to use the foreign nationals on their projects; and (c) fraudulent contracts between the petitioning company and the issuer of the purported end-client letter that purported to prove the existence of the project referred to in the end-client letters. TOMASZEWSKI used templates that CO-CONSPIRATOR 1, and others acting at CO-CONSPIRATOR 1's direction provided her when creating these false documents. In addition, TOMASZEWSKI asked CO-CONSPIRATOR 1 and CO-CONSPIRATOR 2 to affix forged signatures to the fraudulent end-client letters, which both CO-CONSPIRATOR 1 and CO-CONSPIRATOR 2 did before the letters were included in the petitions.

16. At CO-CONSPIRATOR 1's direction, TOMASZEWSKI also put false statements in documents that the petitioning companies sent both USCIS and the United States Department of State, in the event that either agency requested additional information about a filed petition.

17. TOMASZEWSKI, CO-CONSPIRATOR 1, and CO-CONSPIRATOR 2 also took steps to hide the criminal conduct in response to inquiries from USCIS officials, USCIS investigators, and criminal investigators.

### III. Overt Acts in Furtherance of the Conspiracy

18. During and in furtherance of the conspiracy, in King County, within the Western District of Washington, and elsewhere, one or more of the conspirators committed one or more of the following overt acts, among others:

19. On or about March 19, 2014, TOMASZEWSKI sent an email to CO-CONSPIRATOR 1 and CO-CONSPIRATOR 2 attaching fraudulent petition-related documents relating to a foreign national referred to herein as "A.K." CO-CONSPIRATOR 1 and CO-CONSPIRATOR 2 compiled the documents and mailed them to USCIS, resulting in the approval of an H-1B visa for A.K.

20. On or about March 29, 2014, TOMASZEWSKI sent CO-CONSPIRATOR 1 and CO-CONSPIRATOR 2 an email attaching fraudulent petition-related documents relating to a foreign national referred to herein as "P.J." CO-CONSPIRATOR 1 and others working at his direction at the companies' offices compiled the documents and mailed them to USCIS, resulting in the approval of an H-1B visa for P.J.

21. On or about March 5, 2014, CO-CONSPIRATOR 1 affixed a forged signature to a letter that purported to have been issued by a client (referred to herein as "CLIENT B") of COMPANY B. The letter was on CLIENT B's letterhead and asserted that a foreign national employee of COMPANY B's referred to herein as "M.S." had been earmarked for a CLIENT B project. The letter purported to have been signed by CLIENT B's Director of Production Operations. After creating the fraudulent document, CO-CONSPIRATOR 1 sent it to TOMASZEWSKI for inclusion in a COMPANY B visa petition for M.S.

22. In or about the summer of 2015, TOMASZEWSKI and two other employees at the Companies removed documents from hardcopies of visa petitions stored in the Companies' offices, at CO-CONSPIRATOR 1's direction. TOMASZEWSKI understood that she removed the documents from the petitions in order to conceal their existence from U.S. government investigators and in order to make it appear as if CO-CONSPIRATOR 1 and others at the Companies had no preexisting knowledge of the documents. TOMASZEWSKI and the two other employees removed documents from the Companies' files in CO-CONSPIRATOR 1's presence.

//
//

All in violation of Title 18, United States Code, Section 371.

DATED this 10th day of September, 2018.

_____
ANNETTE L. HAYES
United States Attorney

_____
KATHERYN FRIERSON
Assistant United States Attorney

_____
SIDDHARTH VELAMOOR
Assistant United States Attorney